# United States Court of Appeals for the Fifth Circuit

No. 21-60936
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
October 18, 2022
Lyle W. Cayce
Clerk

Claudia Alexandra Chimbo-Cajamarca,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A202 077 779

Before King, Higginson, and Willett, *Circuit Judges*.

Per Curiam:*

Claudia Alexandra Chimbo-Cajamarca seeks review of a Board of Immigration Appeals decision affirming the denial of her requests for withholding of removal and protection under the Convention Against Torture. For the reasons stated below, we DENY the petition for review.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60936

Chimbo-Cajamarca is from Ecuador and unlawfully entered the United States on August 26, 2020. She was placed in withholding-only proceedings and applied for withholding of removal and Convention Against Torture ("CAT") protection. She argued that she had suffered persecution in Ecuador based on her race[1] and her membership in two particular social groups: Ecuadorian women and family members of disabled persons in Ecuador.

In support of her application, Chimbo-Cajamarca testified to the following instances of violence against her and her family in Ecuador. In November 2017, her husband was attacked and left in a coma for a week.[2] For the next two years, her husband was unable to work. The family decided to move from Azuay to Macas four months later, but problems continued. In Macas, Ruben Pinchupa threatened Chimbo-Cajamarca's husband because he refused to sell drugs for Pinchupa. Pinchupa had sought out Chimbo-Cajamarca's husband because he was unable to perform physical labor due to his injuries, and Pinchupa told him it was easy work. Despite Pinchupa's threats that he would hurt Chimbo-Cajamarca's family if her husband did not sell drugs for Pinchupa, her husband refused.

Pinchupa acted upon his threats. Chimbo-Cajamarca's brother-in-law was found hanging from a rope in November 2018, which the police ruled a suicide. In September 2019, her sister-in-law was killed and her genitals slashed; her murder is still being investigated by the police. Chimbo-Cajamarca's husband fled Ecuador for the United States on November 16, 2019. In August 2020, Pinchupa physically assaulted Chimbo-Cajamarca in

---

[1] Chimbo-Cajamarca did not appeal the immigration judge's determination that she failed to establish she was targeted because of her race, and we do not consider it here.

[2] The record is unclear whether this incident is related to the other events Chimbo-Cajamarca described, but it does not affect our analysis either way.

her home; he tried to kill her but ran off after her children made noise and the neighbors arrived. During the assault, Pinchupa admitted to murdering her brother-in-law and sister-in-law. Chimbo-Cajamarca left Ecuador approximately two weeks later, leaving her children in the care of one of her brothers-in-law in Quito.

The immigration judge ("IJ") denied Chimbo-Cajamarca's application after determining that her testimony and evidence did not satisfy the requirements for withholding of removal and protection under CAT. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Chimbo-Cajamarca timely petitioned the Second Circuit for review, and the Second Circuit transferred the petition to this court. Order, *Chimbo-Cajamarca v. Garland*, No. 21-6437 (2d Cir. Dec. 15, 2021).

We review the BIA's decision for substantial evidence and consider the IJ's decision only to the extent it influenced the BIA. *Martinez Manzanares v. Barr*, 925 F.3d 222, 226 (5th Cir. 2019); *Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019). Under this standard, we reverse the BIA only if the evidence is "so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Martinez Manzanares*, 925 F.3d at 222 (quoting *Qorane*, 919 F.3d at 909). We review the BIA's legal determinations de novo. *Id.*

"Under 8 U.S.C. § 1231(b)(3)(A), withholding of removal is a mandatory form of relief if an alien's life or freedom would be threatened in the country of removal because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018) (quoting *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009)). The REAL ID Act further requires that an applicant establish that at least one of these statutorily protected grounds "was or will be at least one central reason for persecuting the applicant." 8

No. 21-60936

U.S.C. § 1158(b)(1)(B)(i). While a statutorily protected ground "need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Shaikh*, 588 F.3d at 864 (quotation omitted).

While the BIA affirmed the IJ's denial on multiple grounds, we need only examine one—the central reason test—to resolve this case.[3] The BIA agreed with the IJ that Chimbo-Cajamarca failed to demonstrate the requisite nexus between the harm she experienced in Ecuador and her membership in the particular social groups she alleges.[4] Specifically, the BIA affirmed the IJ's finding on this point, stating that Pinchupa "was primarily motivated in harming her and her husband because her husband refused to advance [Pinchupa's] criminality by selling drugs for him."

Chimbo-Cajamarca disputes this finding and argues that because women are targeted more often than men by criminals in Ecuador and, but for her husband's condition, neither he nor she would have been targeted by Pinchupa, there is a nexus between her status—both as an Ecuadorian woman and the wife of an individual with a disability—and the violence she and her family have suffered. However, the record fails to support her claims. Chimbo-Cajamarca testified that Pinchupa "threatened [her and her husband] because [her] husband refused to sell drugs for him." Later, she testified Pinchupa "was always threatening" her and her husband because he

---

[3] In her petition, Chimbo-Cajamarca does not contest the BIA's affirmation of the IJ's denial of CAT protection. Accordingly, this claim is waived, and we do not address it. *Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004) (observing that petitioner "waived her claim for relief under Article 3 of the Convention Against Torture by failing to raise it in her petition for review").

[4] For purposes of this case, we need not—and do not—determine whether Chimbo-Cajamarca's proffered social groups of Ecuadorian women and family members of disabled persons in Ecuador are protected under the law.

4

was "always telling [her] husband—asking him to work for him," and her "husband refused to do that work." She did not testify that Pinchupa had targeted her *because* she was a woman or because her husband was disabled; rather, he had targeted her because her husband refused to sell drugs for him. *See Martinez Manzanares*, 925 F.3d at 227 (affirming BIA determination that nexus was insufficient where testimony established petitioner was targeted because of his actions, not his purported social group). While her husband's disability may have been a reason that Pinchupa originally sought him out for work, it is not the central reason that he harmed and threatened to harm Chimbo-Cajamarca. It is, at most, incidental to the primary motivation Pinchupa had for harming her and her family—to force her husband into Pinchupa's illegal drug scheme.

While we sympathize with Chimbo-Cajamarca for the hardships she has faced, our legal system only provides withholding of removal to individuals who face harm in their originating countries for a specific set of reasons. Refusing to engage in the drug trade is not one such reason, and the BIA's finding that Chimbo-Cajamarca's proffered social groups were not the central reasons for the harm she experienced was supported by substantial evidence. Therefore, her petition for review is DENIED.